UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVEN LEMIEUX, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 06-14-B-W |
| | ) | |
| | ) | Civil No.  07-151-B-W |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**<u>RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION</u>**

Steven Lemieux was convicted by a federal jury in November 2006 on two counts of making a false statement to a firearms dealer in violation of 18 U.S.C. § 922(a)(6). After voluntarily dismissing his direct appeal to the First Circuit Court of Appeals, Lemieux filed this timely 28 U.S.C. § 2255 motion.  In this motion Lemieux raises one claim: it is an assertion that he received ineffective assistance of counsel because his attorney failed to sufficiently investigate (and present to the jury) evidence that, subsequent to his conviction for domestic assault in Maine, he had a reason to believe that he was entitled to purchase a firearm despite the pre-existing assault conviction. Lemieux's hopes for habeas relief are tethered to the fact that he was approved by a federal agent for a firearm <u>after</u> his assault conviction but <u>before</u> the two unsuccessful attempts to purchase a firearm.  The rejected second and third applications were the basis for the two false statement counts.   On all three of his applications for a firearm Lemieux represented to federal authorities that he had never been convicted of a misdemeanor crime of domestic violence.

Lemieux's court-appointed counsel in this habeas proceeding, an assistant federal defender, has filed a cogent memorandum in support of Lemieux's claim and requests an evidentiary hearing.  The United States has filed a motion for summary dismissal.  On Lemieux's behalf, the public defender has filed a reply brief.  With the proviso that this Court, of course, always has discretion to convene an evidentiary hearing if it sees fit, I now recommend that the Court summarily deny Lemieux 28 U.S.C. § 2255 relief.

## *Discussion*

Lemieux was convicted of an assault on his wife on February 4, 2004.  The two applications that were the predicate for the false statement charges against Lemieux were filled out on January 20, 2005,[1] and August 29, 2005.  Key to the current 28 U.S.C. § 2255 motion is Lemieux's evidence that he was able to get federal approval for the purchase of a firearm apropos a December 4, 2004, application.  (See Docket No. 7-2.)

The problem with Lemieux's 28 U.S.C. 2255 plea is that even if his attorney had explored/pressed Lemieux's initial December 2004 post-assault-conviction success in purchasing a firearm it would have had very limited verdict-swaying 'purchase' given the evidence at trial.

 Yes, the 28 U.S.C. § 2255 evidence is that Lemieux was able to get a federal agent to approve his application to purchase a firearm after his conviction in Maine for domestic assault.  However, as the Court is well aware, Lemieux's subjective knowledge that he potentially faced losing his firearm privileges at the time of his Maine assault conviction was a concern that was rigorously examined during his federal false-statement trial.

---

[1] The  Maine Supreme Court issued its mandate on Lemieux's direct appeal on January 5, 2005.

For instance, the state prosecutor who met with Lemieux at the time the state charges were pending testified at the federal trial:

> I spoke to Mr. Lemieux. At that time, he was not represented by counsel. I spoke with the -- prior to even his arraignment, he'd come to my office. I spoke to him on at least two occasions, and I talked to him about the assault. I made an offer on the -- the charge of assault. He was upset about the fact that he was going to lose his right to bear arms for the rest of his life. He even got quite emotional.

(Trial Tr. at 141-42.)

During the state proceedings, there were negotiations to have Lemieux plead guilty to a disorderly conduct charge in lieu of the domestic assault charge. Lemieux in fact pled guilty to disorderly conduct but then, through counsel, got the conviction nullified due to an error in drafting the amended indictment and the assault charge was revived. The prosecution moved forward on the assault charge, Lemieux proceeding pro se and electing a bench trial.

After Lemieux was convicted of assault, the presiding state court justice, Justice Jabar, explored the conditions of probation with Lemieux and paid particular attention to the difference between a conviction for disorderly conduct and the attendant one-year firearm prohibition and the assault conviction with the federal lifetime firearm prohibition. (Trial Tr. at 118-19, 121- 134-39.)    Defense counsel tried to highlight ambiguities in the state justice's discussion with Lemieux for the federal jury, hoping to suggest that Lemieux could have understood from this colloquy that he would face only a one-year prohibition. (Id. at 122-23, 126-28, 131,138-39, 141.)  This Court requested a sidebar and then cleared the court room to discuss its concerns that this line of questioning by the defense "seriously misleads the jury." (Id. at123-24.)  This Court opined:

>Justice Jabar said to Mr. Lemieux, I'm trying to tell you that you are crazy not to accept the plea to disorderly conduct and go along with the recommendation of the district attorney's office – the district attorney's office that you have been bad-mouthing -- and that -- and they were doing you a favor, and you didn't know it.
>
>He goes on to say, if you want to stand on principle, that's fine, then you stand convicted, and if you don't want to abide by the conditions of probation, you're going to have to do 364 days in jail, and that's your decision. It's not the court's decision. I'm telling you now it's your decision.
>
>And Mr. Lemieux responded, I am not -- I don't want to go to jail. All I'm asking you is to be fair and not take my firearms away. And the court said, I have no choice. You gave me no -- you gave me no choice. The federal law takes your firearms away because of the conviction for -- do you understand? It is because of the assault conviction. You are not willing to go along with the negotiated plea with the district attorney's office for disorderly conduct. As a result, you gave me no choice.
>
>Now you indicate to me that you're not even willing to plead to disorderly conduct, due to the probationary period, in exchange for having the right to get your firearms.
>
>What would that consist of? The court, probation for a year, abide by the conditions of probation. What would be the conditions of probation? He's talking here about disorderly conduct. The same conditions, you would have to give up your firearms for a year, but after that, you would have a right to bear arms; you would have a right to hunt, period.
>
>He's talking … not about the conviction for assault. As I read it, he's talking about if he accepted the plea to disorderly conduct. … Justice Jabar was not telling him that if he were convicted of domestic assault, that he would have the right to bear arms after a year of probation.
>….
>
>The whole issue here that Mr. Lemieux was discussing with the judge at that time seems to me to be his right to bear arms, and Mr. Lemieux makes the point, there's no reason to be taking my firearms away for life. There just isn't. He's objecting to it. And the court said, you made the choice. You could have avoided that by simply pleading to disorderly conduct.
>
>And he says, and being punished for something I didn't do? And the court says, so you're not willing to plead to disorderly conduct and pay a fine and be on probation in exchange for getting your guns back. You're telling me you're not willing to do that. And he replied, I still -- it's still wrong.
>
>And the court then said, I'm asking you, are you willing to do that? It's not your interpretation of what's right and wrong. It's my interpretation of what's right and wrong or a jury's interpretation of what's right and wrong. If you want to insist and stick to your principles and not listen to

>       the court's interpretation of the facts, that's your decision, but it is your
>       choice to not have guns for the rest of your life. That's your decision. And
>       Mr. Lemieux again says, I don't want not to have guns for the rest of my
>       life.
>            I -- I just -- I think the context here is -- is palpably clear that what
>       Justice Jabar was saying is, look, if you accept responsibility for
>       disorderly conduct, you'll be on probation for a year. You won't be able to
>       have guns for a year, but after that year expires, you'll be able to get your
>       guns back. But if you force the court to convict you for assault, federal law
>       prohibits you for having those guns for the rest of your life.
>            And I don't know -- I haven't read the whole transcript, but it
>       literally leaps right out at you. I think your question really seriously
>       misleads the jury as to what was going on there…

(Id. at 124-28.)[2]

What is more, one of the witnesses at the federal false statement trial was a court clerk who Lemieux twice encountered after his state conviction claiming that there was a mistake in the judgment and commitment order. (Trial Tr. at 109-15.) Shortly after Lemieux's February 2, 2004, conviction Lemieux came into the clerk's office and said that there was a mistake in the paperwork that needed to be corrected. (Id. at 110.) And after Lemieux was unsuccessful on direct appeal he returned to the clerk's office and contended that there was a mistake in the judgment. (Id. at 114.)

The record is quite clear that throughout the course of his state prosecution the concern about his right to purchase and keep firearms was running through Lemieux's mind.

In responding to the United States' motion for summary dismissal –in addition to his contention that Justice Jabar's consequence colloquy was not clear -- Lemieux argues that because he was able to get approval to purchase a firearm on his December 2004 he

---

[2]  In addition, the state prosecutor testified that the state justice expressly asked Lemieux if he understood the effects of the assault conviction and Lemieux indicated that he had talked to an attorney and that "he understood that if he was convicted of domestic assault, he would not be able to possess firearms for the rest of his life." (Id. at 137.)

5

"had been informed by *federal* authorities that his prior conviction was not a qualifying misdemeanor conviction of domestic violence." (Resp. Mot. Summ. Dismissal at 2-3; see also Sec. 2255 Mem. at 7-8.) After this December 2004 approval, Lemieux now argues, he could have reasonably believed that the January 2005 response "was the mistaken one." (Resp. Mot. Summ. Dismissal at 3.) He also points out that he went to the same firearms dealer all three times, an indication that he was not firearm dealer shopping. (Id. at 4.)[3] In sum, Lemieux argues:

> Here, the defense presented contemplated that Mr. Lemieux was confused about his prohibited status. Had the jury been informed of all the relevant facts reflecting Mr. Lemieux's state of mind at the time he made the charged statements, including the fact that he knew he had been approved by the ATF to purchase a firearm after Justice Jabar told him he couldn't ever possess firearms again, there is a very real possibility that the result would have been different. This is because the jury would have been shown that Mr. Lemieux would have had a legitimate basis to be confused.

(Id. at 4-5.)

Taking Lemieux's claim that he did inform his attorney of the 2004 approval at face value,[4] is was a creditable tactical decision not to present to the jury evidence of a third application for a firearm in which Lemieux indicated that he had not been convicted of a misdemeanor crime of domestic violence. Given the other evidence at trial concerning Lemieux's awareness about the federal bar on his right to purchase a firearm as a consequence of his assault conviction the estoppel argument was unlikely to carry

---

[3] What this argument overlooks is that a plausible inference to draw from Lemieux's decision to go to the same firearm dealer on his second attempt is that he was taking advantage of the windfall of having his first application approved on application to that same shop.

[4] In his form Section 2255 motion signed under penalty of perjury Lemieux represents that he told his attorney about his December 2004 approval for a firearm purchase but that his attorney never presented this information to the jury. (Sec. 2255 Mot. at 4.) Without convening an evidentiary hearing or requesting an affidavit from Lemieux's defense counsel this assertion must be taken at face value. If this assertion is not true, of course, counsel could not be faulted for not investigating whether or not Lemieux had this first-time success in getting a post-assault firearm application approved.

the day.  Assuming counsel knew of the December 2004 approval and declined to use this evidence, it is a tactical decision that certainly survives scrutiny under the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) performance inquiry for an ineffective assistance claim. <u>See</u> <u>Strickland</u>, 466 U.S. at 689 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" )(quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)).

## *Conclusion*

For the reasons above I recommend that the Court summarily deny this 28 U.S.C. § 2255 motion.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


March 6, 2008.
/s/Margaret J. Kravchuk
U.S. Magistrate Judge