UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CV-07-151-B-W |
| | ) | CR-06-14-B-W |
| STEVEN LEMIEUX | ) | |

**ORDER AFFIRMING THE**
**RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

On March 6, 2008, the United States Magistrate Judge filed her Recommended Decision regarding Mr. Lemieux's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. The Petitioner filed an objection to the Recommended Decision on March 19, 2008. The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; it has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurs with the recommendations of the United States Magistrate Judge for the reasons set forth both in her Recommended Decision and in this opinion, and determines that no further proceeding is necessary.

**I.    DISCUSSION**

On April 4, 2006, Steven Lemieux was convicted of two counts of providing false information to a federal firearms licensee, violations of 18 U.S.C. § 922(a)(6). The Indictment charged that although Mr. Lemieux had been convicted of a misdemeanor crime of domestic violence, he twice denied this fact on ATF forms when he attempted to purchase firearms on January 12, 2005, and August 29, 2005.[1] *Indictment* (Docket # 1). In his § 2255 motion, Mr. Lemieux claims that prior to his two attempts to purchase firearms in 2005, he purchased a

---

[1] The Indictment charges that Mr. Lemieux's January 2005 attempted purchase occurred "[o]n about January 12, 2005 . . . ." *Indictment* at 1. It appears that Mr. Lemieux completed the ATF paperwork on January 10, 2005, and attempted to pick up the gun on January 12, 2005.

firearm from a federally licensed dealer on December 4, 2004, an act he argues is the equivalent to being "told by federal authorities that he could legally purchase a firearm in December 2004." *Resp. to Mot. for Summ. Dismissal* at 3 (Docket # 9). He asserts that his trial attorney's failure to raise the December 4, 2004 firearm purchase deprived him of an essential defense – entrapment by estoppel – and represents such ineffective assistance of counsel that the Court must set aside the convictions and grant a new trial.

As a preliminary matter, it bears emphasis that the federal jury convicted Mr. Lemieux of making false statements about his misdemeanor conviction on the ATF Form 4473; he was neither charged nor convicted of attempted possession of a firearm by a prohibited person. Thus, Mr. Lemieux is not now claiming that the fact the Government allowed the sale to go through on December 4, 2004, gave him the false impression that his misdemeanor conviction did not bar gun possession. This claim, if made, would be a non-starter. The December 4, 2004 firearm purchase was allowed in part because, when he completed the ATF Form 4473, Mr. Lemieux failed to reveal his February 4, 2004 conviction for domestic assault. Mr. Lemieux does not and could not assert that because the Government failed to block the gun sale on December 4, 2004, based in part on his misrepresentation of his criminal history, he was justified in relying on the earlier sale when he reapplied to purchase more guns.

Mr. Lemieux's contention is more subtle. He cannot now contest the underlying domestic assault conviction.[2] *Lewis v. United States*, 445 U.S. 55, 67 (1980); *United States v. Lemieux*, No. 06-14-B-W, 2006 U.S. Dist. LEXIS 16356, at *4 (D. Me. Mar. 31, 2006). Instead, he says that even though he was convicted of domestic assault on February 4, 2004, he did not know he was convicted of domestic assault. He points out that the Government must demonstrate that he "knowingly" made a false or fictitious statement of a fact material to the lawfulness of the sale of a firearm. 18 U.S.C. §

---

[2] Mr. Lemieux was convicted of assault on February 4, 2004. He appealed the conviction to the Maine Supreme Judicial Court and the Law Court affirmed the judgment on January 5, 2005.

922(a)(6). He contends that because he omitted his conviction from the ATF Form 4473 on December 4, 2004, but the sale nevertheless went through, this bolsters his claim that he did not know he was convicted of a misdemeanor crime of domestic assault when he denied the domestic assault conviction in his later attempts to purchase firearms. Further, he asserts that the Government made representations at the time of the sale that induced him to believe that he was not required to report the assault on the ATF Forms.

        **A.**        **Entrapment by Estoppel**

              **1.**        **An Overview**

Mr. Lemieux's main attack against the convictions is the failure of trial counsel to raise the legal defense of entrapment by estoppel. In *Smith*, the First Circuit observed that entrapment by estoppel is "predicated upon fundamental notions of fairness embodied in the Fifth Amendment's due process clause. Whether the prosecution of a defendant violates his due process rights depends not solely upon whether he was incorrectly informed or misled by a government official, but upon the totality of the circumstances surrounding the prosecution." *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991). The First Circuit clarified that entrapment by estoppel is not based upon the defendant's intent to commit the crime: "The underlying concept is that, under certain circumstances, an individual may be entitled reasonably to rely on the representations of an authorized government official as to the legality of his conduct. Unlike defendant's previous contention that the agent's advice caused him to lack criminal intent, entrapment by estoppel rests upon principles of fairness, not defendant's mental state." *Id.* *Smith* also stressed that entrapment by estoppel is "recognized as applicable under certain, relatively narrow, circumstances." *Id.*

To establish entrapment by estoppel, Mr. Lemieux must demonstrate:

(1) that a government official told him the act was legal;

(2) that he relied on the advice;

(3) that the reliance was reasonable; and

(4) that, given the reliance, prosecution would be unfair.

*United States v. Ellis*, 168 F.3d 558, 561 (1st Cir. 1999).

### 2. The Defendant's Obligation of Truthfulness and Completeness

Underlying the concept of entrapment by estoppel is the premise that before receiving official advice, the Defendant must have presented the government official with "all the relevant historical facts." *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987). If the party asserting the equitable defense has failed to be forthcoming, has presented only half the story, or worse yet, misrepresented the true facts, and those omitted or erroneous facts would have been material, he cannot claim to have been misled by a government official he himself misled. *See United States v. Billue*, 994 F.2d 1562, 1569 (11th Cir. 1993) (Defendant's reliance on "the defense of entrapment by estoppel is unavailing [because if] permitted, it would allow convicted felons to withhold material facts from a federally licensed firearms dealer, elicit an erroneous response based on such non-disclosure, and then plead entrapment."); *United States v. West Indies Transp.*, 127 F.3d 299, 313 (3d Cir. 1997) (No entrapment by estoppel defense when the district court found "that no comments by a government agency can be construed as indicating to defendants that their conduct was legal, when no government official was ever informed as to the specifics of the given situation. Because defendants failed to inform any government authority of the facts which are relevant to obtaining the visas, they could not have obtained or relied upon any advice indicating that their conduct with regard to the information provided on the visa applications was legal."); *United States v. Howell*, 37 F.3d 1197, 1205 (7th Cir. 1994) (entrapment by estoppel defense rejected because there was no factual basis for the defense when

4

gun dealer stated that he never gave any advice to the defendant, and, in fact, never knew about the defendant's prior felony conviction; it was the defendant who misrepresented the facts to the gun dealer).

Here, the defense of entrapment by estoppel founders on this essential foundational requirement.  On December 4, 2004, Mr. Lemieux filled out an ATF Form 4473, affirmatively representing that he had never been convicted of a misdemeanor crime of domestic assault, when in fact on February 4, 2004, exactly ten months earlier, he had been so convicted.  This bars the defense.  Whether the requirement that the defendant provide truthful material information before asserting entrapment by estoppel is an equitable prerequisite, estops a claim of reasonable reliance, or defeats protestations of unfairness, the Court concludes that here, where Mr. Lemieux falsely omitted a material fact from the Form 4473, he cannot benefit from his own mistake.  His material misrepresentation standing alone defeats his § 2255 claim; by his own actions, the defense of entrapment by estoppel is unavailable.

### 3.  *United States v. Tallmadge* and the First Circuit

For the sake of completeness, however, the Court will address Mr. Lemieux's remaining points.  To support his argument, Mr. Lemieux relies heavily upon *Tallmadge*, a 1987 case from the Ninth Circuit in which a federally licensed firearms dealer, who gave a defendant erroneous advice, was found to be a federal government agent for purposes of entrapment by estoppel. *Tallmadge,* 829 F.2d at 774.

In *Tallmadge*, a defendant who possessed a firearm after a felony conviction, relied upon "the representation of a federally licensed gun dealer that a person convicted of a felony in a state court could purchase firearms if the offense had subsequently been reduced to a misdemeanor." *Id.*  As it turned out, the dealer's information was erroneous and the Government

5

prosecuted Mr. Tallmadge for being a felon in possession of a firearm.³ *Tallmadge* observed that "a buyer has the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts, that a person may receive and possess a weapon if his felony conviction has been reduced to a misdemeanor." *Id.* at 775. *Tallmadge* then concluded that "the prosecution and conviction of Tallmadge for the receipt and possession of firearms, after he was misled by the government agent who sold him the weapons into believing that his conduct would not be contrary to federal law, violated due process." *Id.*

In *Smith*, the First Circuit addressed, but did not adopt *Tallmadge*. The First Circuit wrote that by "reciting the facts of *Tallmadge* and related cases, we do not mean to indicate that we necessarily agree with the court's analysis and holding therein." *Smith*, 940 F.2d at 714 n.3. The First Circuit went on:

> Unlike the defendant in *Tallmadge*, who received a consistently misleading message from several sources, Smith received, at most, conflicting indications about his possession of firearms. On the one hand, Smith plainly knew that, as a convicted felon, his possession of firearms was illegal: [he] was under investigation for precisely such a firearms offense. On the other hand, defense counsel characterized [the federal agent's] statements (as represented by Smith) as sending a "mixed message . . . ."

*Id.* at 715.

---

³ *Tallmadge* also noted that the Defendant "sought and obtained advice from an experienced criminal lawyer regarding his right to possess a nonconcealable firearm . . . [and relied upon] the comments of the state trial judge and the deputy district attorney at the probation termination proceedings." *Tallmadge*, 829 F.2d at 775. *Tallmadge* did not further discuss whether this additional advice from non-federal authorities affected the decision. However, in *Brebner*, the Ninth Circuit clarified that *Tallmadge*'s reference to non-federal authorities was directed only to the second element – the reasonableness of the defendant's reliance on the federally licensed firearm's dealer's misrepresentations. *United States v. Brebner*, 951 F.2d 1017, 1026 (9th Cir. 1991). To establish entrapment by estoppel in federal law, *Brebner* stated that a "defendant is required to show reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who, like licensed firearms dealers, has been granted the authority from the federal government to render such advice." *Id.* at 1027.

### 4. The government official requirement

Applying the first *Ellis* factor, Mr. Lemieux must establish that "a government official told him the act was legal . . . ." *Ellis*, 168 F.3d at 561. Here, Mr. Lemieux faces substantial legal and factual hurdles. Mr. Lemieux must first establish that the gun dealer was a government official, a legal proposition that is questionable at best. Although a majority of the Ninth Circuit panel in *Tallmadge* considered a federally licensed firearms dealer to be a government official for purposes of an entrapment by estoppel defense, the dissent in *Tallmadge* challenged that conclusion. *Compare Tallmadge*, 829 F.2d at 774 ("Under these circumstances, we believe that a buyer has the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts, that a person may receive and possess a weapon if his felony conviction has been reduced to a misdemeanor."); *with id.* at 776 (Kozinski, J., dissenting) ("I believe the panel errs in allowing Tallmadge to rely on statements purportedly made by the gun dealer, who is not even a federal employee, much less an official authorized to bind the government.").

Since *Tallmadge*, the circuits that have addressed the issue have sided with the *Tallmadge* dissent. *United States v. Hardridge*, 379 F.3d 1188, 1193 (10th Cir. 2004); *United States v. White*, Nos. 98-4770, 4771, 4784, 1999 U.S. App. LEXIS 22772, at *3 (4th Cir. Sept. 20, 1999); *Billue*, 994 F.2d at 1569; *Howell*, 37 F.3d at 1206; *United States v. Austin*, 915 F.2d 363, 367 (8th Cir. 1990). Even a subsequent Ninth Circuit panel questioned the majority view in *Tallmadge*. *See United States v. Clegg*, 846 F.2d 1221, 1224 (9th Cir. 1988) ("Whatever our disagreements may be with the court's ruling in *Tallmadge* . . . , it is the law of the Circuit and we are bound to follow it."). In the absence of First Circuit authority, the Court agrees with the

7

majority. The Court concludes that the federal firearms dealer in this case was not a federal government official within the meaning of the entrapment by estoppel defense.

### 5. The affirmative representation requirement

Second, unlike *Tallmadge*, there is no evidence that in December 2004, the firearms dealer affirmatively told Mr. Lemieux he had a right to possess a firearm. Under *Smith*, before a defendant can take advantage of entrapment by estoppel, he must demonstrate that a government official has "assure[d] a defendant that certain conduct is legal." *Smith*, 940 F.2d at 714. In *Smith*, the First Circuit concluded that an entrapment by estoppel defense was unavailable to a defendant who had received "mixed messages" about the legality of his conduct. *Id.* at 715.

Here, there is no evidence that the dealer ever spoke to Mr. Lemieux about his right to possess a firearm, much less made an active misrepresentation. After Mr. Lemieux erroneously completed an ATF Form 4473, it appears that the National Instant Criminal Background (NICB) check system did not, for whatever reason, capture his February 4, 2004 conviction for domestic assault, and therefore cleared the purchase. There is no allegation that a firearms dealer told Mr. Lemieux that the purchase was legal; the dealer simply completed the sale, a distinction that makes a difference under an estoppel theory. *See United States v. Pardue*, 385 F.3d 101, 108 (1st Cir. 2004) ("In order to establish a prima facie case for entrapment by estoppel, a defendant must put forth an affirmative representation by a government official that his conduct was or would be legal."); *Ellis*, 168 F.3d at 561 (insufficient evidence consisted of the defendant's question to a drug agent regarding the legality of possessing ammunition and the agent did not follow up with the defendant); *Tallmadge*, 829 F.2d at 770 (dealer told defendant that there was no problem owning a gun if his felony conviction had been reduced to a misdemeanor);

*Hardridge*, 379 F.3d at 1190 (dealer told defendant, who had adult felony convictions, that he did not need to declare juvenile convictions).

Finally, to the extent that Mr. Lemieux contends that the completed purchase itself constitutes such an affirmative representation, Mr. Lemieux has not presented the Court with any authority that an NICB computer check and a dealer sale that relies upon the NICB results amount to an affirmative statement of legality within the meaning of the entrapment by estoppel defense. More specifically, the Court is unwilling to conclude that an NICB computer check, particularly one based on false information, constitutes an affirmative representation for purposes of an entrapment by estoppel defense.

### 6. The reasonable reliance requirements

As to the second and third *Ellis* criterion – that he relied upon that advice and that reliance was reasonable – there are multiple problems: (1) there is no evidence of advice; (2) no evidence of reliance on that advice; and, (3) no evidence that any reliance was reasonable. Here, the charge is that he falsely claimed on January 10, 2005, and August 29, 2005, that he had never "been convicted in any court of a misdemeanor crime of domestic violence." *See Aff. of Matthew Stewart* at 5 (Docket # 8). Even if he had completed a firearms purchase in December 2004, there is no apparent relationship between the accuracy of his prior domestic assault conviction, the correct answer on the ATF Form, and his successful completion of a gun purchase in December 2004.

The analysis might be different if the charge were possession of a firearm. The argument that a defendant thought he could possess a firearm because the Government had permitted a sale would at least present a different set of considerations. But, here, Mr. Lemieux had been convicted of a misdemeanor crime of domestic violence and the correct answers on the ATF

9

Forms 4473 were the same in January and August 2005 as they were in December 2004. The Court cannot conclude that Mr. Lemieux reasonably relied on the December 2004 purchase in completing the January and August 2005 ATF 4473 Forms.

### 7. Fairness

The final criterion is also inapposite. The Court is directed to determine whether, in view of the defendant's reliance on the representations of the federal official, prosecution would be unfair. It strikes the Court that precisely the opposite is true: to allow a prohibited individual to establish an entrapment by estoppel defense by misleading a gun dealer would be unfair to the prosecution and would contravene the purposes of 18 U.S.C. § 922(a)(6). *See Brebner*, 951 F.2d at 1028 (Discussing federal law enforcement agencies responsible for enforcing federal gun laws: "It is essential that accurate and truthful information be provided to these agencies by prior offenders in order not to frustrate [their] task.").

As explained by the First Circuit in *Smith*, a successful claim of entrapment by estoppel "depends not solely upon whether [the defendant] was incorrectly informed or misled by a government official, but upon the totality of the circumstances surrounding the prosecution." *Smith*, 940 F.2d at 714. Considering the totality of the circumstances, Mr. Lemieux's prosecution was not unfair, and therefore his argument regarding this equitable defense is without merit.

### B.     The December 2004 Purchase and "Knowingly False"

Mr. Lemieux's other argument is that his trial counsel should have attempted to present evidence of the successful December 4, 2004 firearm paperwork and purchase to demonstrate that he did not "knowingly" provide false information about his misdemeanor conviction when he completed the forms on January 10, 2005 and August 29, 2005. The argument runs that the

December 4, 2004 purchase, taken together with other evidence, bolsters his claim that he was "confused about his prohibited status." *Pet'r's Objections To Recommended Decision by Magistrate Judge* at 4 (Docket # 11).  Again, however, there is a disconnection between his completion of the ATF Form and his claim of confusion.  His questionable premise is that repeating his misrepresentation three, not two times, somehow confirms that he did not knowingly make it.

But, Mr. Lemieux's assertion that he was confused about his misdemeanor conviction is contradicted by substantial evidence in this case.  First, the transcript of his February 4, 2004 encounter with Justice Jabar in Somerset County Superior Court reveals that Justice Jabar was extraordinarily patient and precise in informing Mr. Lemieux that his domestic assault conviction barred his possession of a firearm.  Secondly, he twice visited the Somerset County Superior Court Clerk's office – both before and after his December 4, 2004 gun purchase – to complain that his conviction was inaccurate and was twice told that the conviction was in fact accurate.  Against this evidence, Mr. Lemieux's assertion that his trial lawyer should have pressed for the admission of evidence of his completed purchase rings hollow.

Still, there is the argument that even if the December 4, 2004 application and purchase might not have resulted in a different verdict, it was still worth attempting to introduce the evidence.  There are, however, multiple dangers from a trial strategy viewpoint in presenting evidence of the December 4, 2004 purchase.  The jury would have learned that Mr. Lemieux had made the same misrepresentation three, not two times; that he was actually successful in obtaining a firearm the first time; that already possessing a firearm, he was seeking to accumulate firearms; and that he was unusually persistent in his attempted acquisitions.  Trial counsel could reasonably have concluded that none of this evidence would have assisted Mr.

Lemieux. The jury could well have concluded that the repetition of the same error makes it more likely that his misrepresentations were not mistaken, but deliberate. The jury would have learned that as a consequence of the December 4, 2004 misrepresentation, Mr. Lemieux, a person who had been convicted of domestic assault, actually came into possession of a firearm and wanted more guns. Finally, the evidence could have signaled an unsettling persistence in Mr. Lemieux's desire to obtain weapons the law denies him.

### C. Ineffective Assistance of Counsel

When analyzing an ineffective assistance of counsel claim:

> The benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The defendant must show both that his counsel's performance was deficient and that it prejudiced the defense. This second point requires a showing that the outcome of the trial would have been different but for counsel's errors.

*United States v. Fuller*, 768 F.2d 343, 346 (1st Cir. 1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984)) (internal citations omitted). Mr. Lemieux's argument regarding the December 2004 gun purchase does not demonstrate that his counsel's performance was deficient. Mr. Lemieux has failed to establish any of the criteria for the application of an entrapment by estoppel defense and has failed to demonstrate that trial counsel's decision not to seek introduction of a prior illegal gun application amounted to ineffective assistance of counsel under *Strickland*. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) (counsel's performance was not deficient if he declined to pursue a futile tactic).

## II. CONCLUSION

1. It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge is hereby <u>AFFIRMED</u>.

2. It is further <u>ORDERED</u> that the Government's Motion for Summary Dismissal (Docket # 8) is <u>GRANTED</u>.[4]

SO ORDERED.

/s/ John A. Woodcock
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May, 2008

---

[4] Each party filed what amounts to a dispositive motion. The Magistrate Judge's Recommended Decision has been docketed as ruling on the Government's Motion to Dismiss (Docket # 8). To properly track the docket entries, this order grants the Government's motion. The result is the same regardless of which motion is the operative motion. To clarify the docket, the Court <u>DENIES</u> the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Docket # 1).